**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

---

**DONACIANO OLIVO and**
**CLARENCE PACHECO**,

Plaintiffs,

v. Civ. No. 10-782 BB/LFG

**CRAWFORD CHEVROLET INC. and**
**CARL ROMERO,**

Defendants.

**MEMORANDUM OPINION**

This matter comes before the Court on Defendants' motion for summary judgment (Doc. 61). Having reviewed the submissions of the parties and the relevant law, the Court finds that Defendants' motion should be *DENIED in part* and *GRANTED in part*.

**Summary of Relevant Facts**

Plaintiff Olivo worked for Defendant Crawford Chevrolet, Inc. at the Santa Fe Chevrolet car dealership as an autopainter. Plaintiff Pacheco worked for Defendant Crawford Chevrolet, Inc., at the same car dealership, as a bodyman. Defendant Crawford Chevrolet, Inc. employed Plaintiffs to repair collision-damaged automobiles. Defendant Carl Romero was a managerial employee of Defendant Crawford Chevrolet, Inc., and he supervised both Plaintiffs in the body shop section of the dealership.

Both Plaintiffs were paid by the job. At Crawford Chevrolet, that meant that employees were given certain assignments and were paid a set amount per assignment–regardless of the amount of time it actually took to complete the assignment. For example, Plaintiff Olivo might be given a painting assignment designated as 15 hours of work; he would be paid for 15 hours on that assignment, even if he spent more or less time on it. Supervisors, including Defendant Romero, distributed the work assignments. If no work was available, the employees had to wait

for work. At least some of the time, employees had to wait at the body shop until new work assignments opened up.

Plaintiffs allege they were each made to wait approximately 10-15 hours each week, without pay, at the body shop between work assignments. Plaintiffs commenced this action by filing a complaint for violations of the New Mexico Minimum Wage Act, the Fair Labor Standards Act, and the New Mexico Human Rights Act in the First Judicial District Court of New Mexico. Defendants removed the case to this Court. Doc. 1.

**Jurisdiction**

Plaintiff brings this suit pursuant to 42 U.S.C. § 1981 and 29 U.S.C. § 201. The Court has jurisdiction over the suit pursuant to 42 U.S.C. § 1331 ("federal question"). This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a), as those claims "form part of the same case or controversy" over which this Court has original jurisdiction.

**Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Medina v. Income Support Div.*, 413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.* v. *Zenith*, 475 U.S. 574, 587-88 (1986). To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential element of the case. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing *Hulsey v. K-Mart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the

evidence, the Court must draw reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587.

**Discussion**

**Count I: New Mexico Minimum Wage Act and Fair Labor Standards Act claims**

Plaintiffs allege that they were made to wait at the body shop between repair jobs and were not compensated for that time. Defendants do not deny that Plaintiffs were required to wait at the body shop between assignments, but they argue that Plaintiffs' pay for completed assignments was understood by all to compensate for waiting time as well. Defendants also argue that neither Plaintiff is protected by the New Mexico Minimum Wage Act or the Fair Labor Standards Act as they were paid on a piecework, flat rate, or commission basis and thus waiting time is not compensable. Doc. 61, p. 2.

A. New Mexico Minimum Wage Act

Plaintiffs bring Count I of their complaint in part pursuant to the New Mexico Minimum Wage Act, NMSA § 50-4-1 *et seq*. The Minimum Wage Act ("MWA") establishes a base rate of pay that all employers must pay to their employees. Plaintiffs allege that Defendant Crawford Chevrolet did not pay them any wage at all for the time that they "were instructed to wait on the employer's premises." Doc. 29, p. 4. Defendants counter that Plaintiffs are not covered by the MWA, because individuals "compensated upon piecework, flat rate schedules or commission basis" are not considered "employees" under the Act. NMSA § 50-4-21(C)(5).

All parties agree that Plaintiffs earned a predetermined wage per each job assignment. The parties also agree that Plaintiffs had to wait between job assignments. Plaintiffs allege and Defendants do not deny that Plaintiffs were not allowed to leave Crawford Chevrolet's premises while waiting for new assignments, though the number of occasions Plaintiffs were prevented from leaving the premises remains in dispute. Thus, Plaintiffs appear to argue that they are not exempt from MWA protection pursuant to § 50-4-21(C)(5), because they are not truly paid on a

flat rate or piecework basis. Although not explicit, Plaintiffs' argument appears to be that Defendants altered their piecework employee status by compelling them to remain on the premises even when no assignments were available.

A sedulous search by the parties and this Court reveals that no other court has addressed the issue of who is properly considered a flat rate or piecework employee under NMSA § 50-4-21(C)(5). It does appear that Plaintiffs are compensated by the job, and thus they are paid on a "piecework" basis. However, the fact that Defendants compelled Plaintiffs to remain on the premises at least some of the occasions when no assignments were available changes the analysis.

Here, Plaintiffs allege that Defendants required them to remain at the car dealership even when no work was available. Such waiting time can only be for the benefit of the employer, by having workers at their disposal when jobs arise. *See Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944) (finding that "readiness to serve may be hired, quite as much as service itself, and time spent lying in wait . . . may be treated by the parties as a benefit to the employer"). Plaintiffs might have been able to read magazines and such, but Plaintiffs allege they were not able to "use time effectively for [their] own purpose[s]." 29 C.F.R. § 785.16. Thus the waiting time at Crawford Chevrolet, though not necessarily burdensome, constituted "work" for Plaintiffs.

Based on the limited record before the Court, there is some evidence that Plaintiffs are either mixed-status employees or non-piecework employees. Tipping the scale in favor of Plaintiffs, as the Court must at this stage, there remains a material question of fact as to whether Plaintiffs are "piecework" employees under the MWA and therefore precluded from recovering under that statute. The Court will deny Defendants' motion for summary judgment as to Plaintiffs' MWA claims in Count I of the Amended Complaint.

B. Fair Labor Standards Act

Plaintiffs allege that Defendants compelled them to remain on work premises while they were waiting for new assignments and that Defendants did not pay them for such “waiting time.” To the extent that they were unpaid but required to remain on Defendants’ premises, Plaintiffs allege that Defendants violated the Fair Labor Standards Act (“FLSA”). Defendants argue that Plaintiffs are exempt employees under FLSA, and thus the minimum wage provisions of that statute do not apply in this case.

In support of their argument that Plaintiffs are exempt employees under FLSA, Defendants cite 29 U.S.C.A. § 213(b)(10)(A) as to Plaintiff Pacheco and 29 U.S.C.A. § 207(i) as to Plaintiff Olivo, as well as cases interpreting those two sections of the FLSA. However, both § 213(b)(10)(A) and § 207(i) govern maximum hour requirements or “overtime” requirements–not basic wage requirements. Plaintiffs do not bring overtime or maximum hour claims in this suit, so the law cited by Defendants is not applicable.

The relevant portion of FLSA in this case requires employers to compensate employees for nonproductive hours, including time spent waiting, under some circumstances. 29 C.F.R. § 778.318(a). FLSA allows employers to compensate employees at a lower rate than normal for waiting time, but employers must pay at least minimum wage even for unproductive time. 29 C.F.R. § 778.318(b). There is no set manner in which an employer must pay employees for unproductive time, but the employer must comply with FLSA in whatever way it chooses to compensate its employees. 29 C.F.R. § 778.318(c).

> For example, while it is not proper for an employer to agree with his pieceworkers that the hours spent in down-time (waiting for work) will not be paid for or will be neither paid for nor counted, it is permissible for the parties to agree that the pay the employees will earn at piece rates is intended to compensate them for all hours worked, the productive as well as the nonproductive hours. If this is the agreement of the parties, the regular rate of the pieceworker will be the rate determined by dividing the total piecework earnings by the total hours worked (both productive and

> nonproductive) in the workweek. Extra compensation (one-half the rate as so determined) would, of course, be due for each hour worked in excess of the applicable maximum hours standard. *Id*.

Defendants aver they have an agreement with their employees wherein pieceworkers are compensated for all work–including waiting time–by the wages they receive for job assignments. *See* Doc. 71, pp. 8-10. Although there was no written agreement between the parties, Defendants argue that such an agreement can be inferred from the circumstances of this case: Plaintiffs worked for Defendants for several years under the same payment system (i.e., pay per job) and did not complain about payment for their time spent waiting. Doc. 71, p. 9. Plaintiffs explicitly deny that there was such an agreement as to compensation for wait time. Doc. 65, p. 5. They provide Defendants' answer to interrogatory number nine as further evidence that the parties did not have an agreement. Doc. 65-6, p. 5 ("Crawford states that it never entered into any such agreement [as to wait time compensation] with Plaintiffs").

Any such agreement, if it did exist, would be totally unavailing. Piecework must be included in any computation of minimum wages. *Walling v. Harnischfeger Corp.*, 325 U.S. 427, 431-32 (1945). Employers cannot escape the requirements of FLSA by a piecework system which attributes artificial hours to set piecework. *Selan v. Becker*, 71 F.Supp. 689, 690-91 (D.C.Wis. 1947). Nor are employees who work on employer's premises "independent contractors" merely because they are paid on a piecework basis. *Walling v. Lippold*, 72 F.Supp. 339, 350 (D.Neb. 1947). Thus, the Court will deny Defendants' motion for summary judgment as to the FLSA claims in Count I of Plaintiffs' complaint.

**Count II: Retaliation claims**

Plaintiffs allege that Defendants unlawfully retaliated against them for lodging complaints regarding wait time between jobs. Doc. 29, p. 17. Specifically, they allege that Defendants reduced both Plaintiffs' paid work assignments and alienated them in the work place, thereby

violating the anti-retaliation provisions of FLSA and the New Mexico MWA. *Id*. In their motion for summary judgment, Defendants allege that Plaintiffs did not actually complain about not being paid for wait time. Doc. 61, p. 10.

"FLSA retaliation claims are analyzed under the . . . three-pronged *McDonnell Douglas* burden-shifting framework." *Pacheco v. Whiting Farms, Inc*., 365 F.3d 1199, 1206 (10th Cir. 2004). Since there is no state case law interpreting the antiretaliation section of the New Mexico MWA, the Court will apply federal case law interpreting the analogous section of FLSA. *See Armijo v. Wal-Mart Stores*, Inc., 168 P.3d 129, 144 (N.M.App. 2007) (where there was no New Mexico case defining a standard under the MWA, court considered case law interpreting the analogous section of FLSA). "Under the first prong of the *McDonnell Douglas* framework, the employee must establish a prima facie case of retaliation by demonstrating (1) [he] engaged in protected activity under FLSA, (2) [he] suffered an adverse employment action contemporaneous with or subsequent to the protected activity, and (3) a causal connection between the protected activity and the adverse employment action." *Id*.

Plaintiffs allege that their complaints about waiting between jobs constituted "protected activity" under the *McDonnell Douglas* framework. However, Plaintiffs contradict themselves in their depositions by stating that they did not complain about not being paid while waiting for work. Thus, Defendants argue that Plaintiffs concede they did not engage in protected activity under the MWA or FLSA.

In his deposition, Plaintiff Olivo expressly states that he complained to a manager (Mr. Woolard) about having to wait around between jobs. Doc. 61-1, 8. He also asked Mr. Woolard "why they wouldn't assign [Plaintiff Olivo] jobs when everybody else had jobs." *Id*. Then, defense counsel changed the question slightly and asked Plaintiff Olivo if he ever complained that he was "not being paid" for waiting between jobs, to which Plaintiff Olivo answered in the negative. *Id*. Taking these two statements at face value, the record indicates that Plaintiff Olivo

did complain about waiting between jobs, although he did not specifically complain about *not being paid* during that time. Plaintiff Pacheco made almost identical statements in his deposition. Doc. 61-1, p. 16. That is, he complained about not having enough work and being made to wait, although he did not specifically complain about not being paid during down time. *Id.*

Verbal complaints may satisfy the complaint requirement of FLSA's antiretalition provision. *Kasten v. Saint-Gobain Performance Plastics Corp*., 131 S.Ct. 1325, 1336 (2011). Unofficial requests for wages have been held to qualify as "complaints" under the *McDonnelll Douglas* framework. *See, e.g., Pacheco*, 365 F.3d at 1206. "[I]t is the assertion of statutory rights (i.e., the advocacy of rights) by taking some action adverse to the company–whether via formal complaint, providing testimony in an FLSA proceeding, complaining to superiors about inadequate pay, or otherwise–that is the hallmark of protected activity under [the antiretaliation provision of FLSA]." *McKenzie v. Renberg's Inc*., 94 F.3d 1478, 1486 (10th Cir. 1996). The complaint, in whatever form it is made, must give the employer fair notice that the employee is asserting a FLSA violation. *Kasten*, 131 S.Ct. at 1334. A complaint gives fair notice when "a reasonable, objective person would have understood the employee to have put the employer on notice that [the] employee is asserting statutory rights under [FLSA]." *Id*. at 1335 (internal quotations omitted).

Although Plaintiffs did not explicitly complain about their wages, the record contains evidence that they did complain about waiting between paid assignments. Since all parties agree that Plaintiffs were not paid while waiting, it is reasonable to infer that Plaintiffs effectively complained about not being paid to wait, because there would be no reason to complain about waiting if they were being paid. Both Plaintiffs assert that they made multiple complaints to managers regarding waiting at work and not being allowed to leave. A reasonable person could have understood that Plaintiffs were asserting their statutory rights under FLSA, even if no specific provision was mentioned. *Cf*. *Pacheco*, 365 F.3d at 1201, 1206 (employee's informal,

verbal request for overtime wages, in which she did not refer to FLSA or any other law, met the "complaint" requirement of FLSA). Viewing the facts in the light most favorable to Plaintiffs, the Court finds that Plaintiffs did engage in protected activity when they complained about waiting between jobs. Thus, Plaintiffs have met the requirements of the first prong of the *McDonnell Douglas* test.

Defendants have not challenged Plaintiffs' retaliation claims under the remaining two prongs of *McDonnell Douglas*, so the Court will not address those standards in this memorandum. Defendants' motion for summary judgment will be denied as to Count II of Plaintiffs' complaint.

**Count III: Unjust Enrichment claims**

Plaintiffs allege that Defendant Crawford Chevrolet benefitted from their unpaid waiting time at the body shop. Doc. 29, p. 6. Specifically, they allege that Defendant Crawford Chevrolet "was unjustly enriched by its refusal to pay Plaintiffs for all hours worked." *Id*. Defendants counter that they were not unjustly enriched by Plaintiffs' unpaid waiting time, because "[t]here is no injustice where Defendants were not required by state or federal law to have paid Plaintiffs for time spent waiting..." Doc. 61, p. 10.

"In order to prevail on their claim of unjust enrichment under New Mexico law, Plaintiffs must show that (1) the [employer] knowingly benefitted at the Plaintiffs' expense, and (2) that allowing the [employer] to retain the benefit would be unjust." *Cruse v. St. Vincent Hosp*., 729 F.Supp.2d 1269, 1276 (D.N.M. 2010) (citing *Credit Inst. v. Veterinary Nutrition Corp*., 62 P.3d 339, 344 (N.M.Ct.App.2002)). Plaintiffs allege that Defendant Crawford Chevrolet benefitted from compelling them to wait without pay between jobs. Doc. 29, p. 6. Defendants do not deny or present any evidence that contradicts that allegation. On the contrary, the record contains evidence that Plaintiffs complained to managers at Defendant Crawford Chevrolet about waiting between paid assignments. Doc. 61-1, 8; Doc. 61-1, p. 16. Thus, the Court can infer that

Defendants knew that Plaintiffs were being made to wait between paid assignments. And, no one denies that Plaintiffs were not paid for waiting. Defendant Crawford Chevrolet, then, would benefit by having Plaintiffs at the ready without paying them for at least some of the time spent waiting. There is no evidence, though, that Defendant Carl Romero benefitted from compelling Plaintiffs to wait. Thus, Plaintiffs established the first element of a prima facie unjust enrichment claim against Defendant Crawford Chevrolet, but not against Defendant Carl Romero.

The second element of an unjust enrichment claim requires Plaintiffs to show it would be unjust to allow Defendant Crawford Chevrolet to retain the benefits of their unpaid wait time. Plaintiffs allege that they were made to wait anywhere from 10 to 20 hours each week, without pay. They also allege that other employees were allowed to leave between jobs, while they were required to remain at the body shop. Defendants do not present any evidence to the contrary. They do, however, allege that Plaintiffs implicitly agreed to have pay from work assignments compensate them for unpaid waiting time. If true, that would suggest that it was just to compel Plaintiffs to wait without pay between jobs. Based on the limited information in the record, there remains a material question of fact whether it would be unjust for Defendant Crawford Chevrolet to benefit from the time Plaintiffs were compelled to wait at the body shop between jobs. Defendants' motion for summary judgment on Count III of Plaintiffs' complaint will be denied as to Defendant Crawford Chevrolet and granted as to Defendant Romero.

**Count IV: Plaintiff Olivo's 42 U.S.C. § 1981 claim**

Plaintiff Olivo also brings a claim pursuant to 42 U.S.C. § 1981, wherein he alleges that Defendants discriminated against him because of his Mexican national origin. Defendants argue that national origin is not protected by 42 U.S.C. § 1981, so Plaintiff Olivo's claim must fail as a matter of law.

"[42 U.S.C.]§ 1981 does not outlaw national origin discrimination per se, only discrimination on the basis of race." *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379,

1387 n.7 (10th Cir. 1991). However, "[t]he concept of race under § 1981 is broad. It extends to matters of ancestry which are normally associated with nationality, not race in a biological sense." *Id.* When it enacted 42 U.S.C. § 1981, "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987). "Such discrimination is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory." *Id.*

Plaintiff Olivo alleges that Defendants discriminated against him because of his Mexican national origin and, in effect, his ancestry. Although he did not use the terms "race" or "ancestry" in the Amended Complaint (Doc. 29), he did allege discriminatory acts that invoked matters of his Mexican heritage. Plaintiff Olivo has also requested to amend his complaint to include the words "race" and "ancestry" in Count IV if the Court so requires. Doc. 65, p. 17. It is clear from his pleadings that Plaintiff Olivo alleges discrimination based on his Mexican ancestry, which is a viable claim under 42 U.S.C. § 1981. *Manzanares v. Safeway Stores, Inc.*, 593 F.2d 968, 970 (10th Cir. 1979) (Mexican American descent is sufficient basis for a § 1981 claim). The Court will not require him to amend his complaint.

Defendants do not challenge the factual allegations of Plaintiff Olivo's 42 U.S.C. § 1981 claim; they simply argue that § 1981 does not apply to national origin discrimination. As noted above, Defendants' reading of Plaintiff's claim is more narrow than case law requires. Thus, Plaintiff Olivo's 42 U.S.C. § 1981 claim survives Defendants' motion for summary judgment, where Defendants have failed to provide any evidence to show they are entitled to judgment as a matter of law.

## Conclusion

Pursuant to the foregoing, the motion for summary judgment will be *GRANTED* as to Count III against Defendant Romero. It will be *DENIED* as to all other claims.

Dated this 26th day of July, 2011.

BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE