IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

DONACIANO OLIVO and
CLARENCE PACHECO,

    Plaintiffs,

v.                                                    No. CV 10-782 BB/LFG

CRAWFORD CHEVROLET, INC., and
CARL ROMERO,

    Defendants.

## COURT'S FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

THIS MATTER came on for a non-jury trial on October 19 and 20, 2011, and having reviewed all the evidence, memoranda of law, and proposed findings of fact and conclusions of law submitted by the parties, and being fully advised, the following are the Court's Findings of Fact and Conclusions of Law:

### Findings of Fact

1.     Defendant Crawford Chevrolet, Inc., ("Crawford") was a business in Santa Fe, New Mexico, that sold new and used cars and that performed body work and painting services on damaged cars.

2.     Crawford employed more than 25 persons each year during the years from 2009 through 2010.

3. **Defendant Crawford had annual gross sales/revenues in excess of $500,000 each year relevant to this action.**

4. **Plaintiffs and other employees of Crawford handled and used goods and materials which moved in interstate commerce.**

5. **Plaintiff Donaciano Olivo worked at Crawford from 1988 to 2000 then again from 2002 until 2010. He painted collision-damaged automobiles after repair.**

6. **Plaintiff Clarence Pacheco worked at Crawford from January 2006 to August 2007 and then again from February 2008 to February 2010. Pacheco was an auto collision repairman (except for a five month period when he worked in the office in 2007, this period is not at issue),**

7. **George Woolard was a co-owner of Crawford from July 1988 until December 6, 2006, when he sold his interest. Woolard returned to Crawford as its general manager on March 9, 2009, until the dealership was transferred on December 2, 2010. Woolard did not assign work to employees in the body shop.**

8. **Carl Romero first worked for Crawford or its predecessor starting in 1997. He became the manager of the body shop at Santa Fe Chevrolet in approximately January 2003 until about April 2007. Romero became body shop manager again on November 1, 2008, which position he held through the sale of Crawford effective December 2, 2010.**

9. **Plaintiffs were not employed as "mechanics" and did not perform any mechanical work as defined by the Fair Labor Standards Act ("FLSA") .**

10. **Romero set initial pay rates and raises during the relevant time for employees in the body shop hired while he worked there, subject to approval by Woolard. He ultimately also controlled all work assignments**

11. **Plaintiffs' wage rates did not vary in proportion with the rates Defendants charged their clients.**

12. **Plaintiffs worked for Defendants under a system in which they were paid a fixed "flag" amount for each job assigned to them.**

13. **Pacheco was paid by the job; *i.e.*, he was paid per flat rate or "flag rate" hour. For example, if the job was assigned for 15 flag hours, he would be paid for no more or less than 15 hours; *i.e.*, he would be paid the same regardless of whether it took him 12 hours or 18 hours to do the work. Thus, he was a pieceworker and not a salaried employee.**

14. **Olivo was paid by the job assignment, i.e., each paint job he performed had a certain number of hours allotted ("flag hours"), and every pay period those hours would be added up and Crawford would pay him for those hours.**

15. **Crawford paid Olivo consistently throughout his employment for flag rate work: he received a paycheck every two weeks for his flag rate hours, without any added pay for non-productive hours. Crawford paid Pacheco consistently throughout his employment.**

16. **Defendants did not enter into an agreement with Plaintiffs that the wage rate paid to Plaintiffs would be sufficient to compensate them for otherwise unpaid wait time.**

17. **Neither Olivo nor Pacheco had an agreement with Crawford regarding pay but were paid every two weeks on a flag rate, piecework basis. Plaintiffs' pay period (bi-weekly) flag hours since 2007 are set forth in Defendants' Exhibits A and B.**

18. **Neither Plaintiff kept a written record of their wait time or nonproductive hours, but Olivo kept track of his flag hours.**

19. **Plaintiffs' flag hours ebbed and flowed at the same times as those of others in the body shop.**

20. **Defendants did not permit Plaintiffs to leave Defendants' premises while they waited for Defendants to assign them work.**

21. **Defendants required Plaintiffs to wait for work on Defendants' premises for between 10 and 20 hours each week without pay.**

22. **Pacheco complained to Romero in December 2008 regarding Defendants' unlawful wage practices of not being paid for wait time.**

23. **Olivo complained to Crawford owner Woolard on various occasions regarding Defendants' unlawful wage practices.**

24. **Defendants never made any inquires as to whether their policy of requiring Plaintiffs to remain on Defendants' premises while waiting for work was a violation of state and/or federal law.**

25. **Defendants never sought or received any advice or information from the U.S. Department of Labor or the New Mexico Department of Workforce Solutions regarding their policy of requiring Plaintiffs to remain on Defendants' premises while waiting for work and/or whether that policy was a violation of state and/or federal law.**

26. **Defendants' failure to pay Plaintiffs for the time they were required to remain on Defendants' premises while they waited for work to be assigned to them was willful, as that term is defined under the FLSA.**

27. **The following Minimum Wage rates applied to Plaintiffs during the time they worked for Defendants:**

    **2004 - 2005: $8.50**

    **2006 - 2008: $9.50**

    **2009 - 2010: $9.85**

28. **Plaintiffs appear to have suffered damages including but not limited to lost wages from Defendants' violation of their rights under the FLSA. The amount of Olivo's lost wages due to uncompensated wait time is $47,295.75. The amount of Pacheco's lost wages due to uncompensated wait time is $11,852.25.**

29. **When asked to describe the allegations underlying his discrimination claim, Olivo mentioned the incident in which Romero wrote "Chachi Oldsmobile" on his car.**

30. In 2004 Olivo said to Romero and others, "Come see my new Chachimobile" or words to that effect and used the term himself after someone else did.

31. Romero later wrote "Chachimobile" on Plaintiff's car with a water pen.

32. Neither the urban or slang dictionaries define Chachi as a "wetback."

33. There is a brand of Chachi food products including guacamole and salsa marketed in New Mexico so it seems highly unlikely that the term is generally understood to mean "wetback."

34. When Woolard found out that Romero wrote "Chachimobile" on Olivo's car, he "chewed out" Romero and told him not to do stupid things like that ever again.

35. Romero never again referred to Olivo as Chachi.

36. Olivo also testified that once when Romero saw him reading a newspaper, he said, "You can't read English, pick up a broom and sweep the shop since you are the only Mexican here." This was disputed and these were the only two incidents brought forward to support Olivo's discrimination claim.

37. Based on these two incidents, Romero did not make consistent or pervasive references to Plaintiff about his national origin.

38. Olivo knew he could complain to Woolard about Romero. Indeed, Plaintiff did so one time, but the only incident he mentioned was the incident regarding Romero writing Chachimobile on his car.

39. Crawford has a policy against discrimination in its handbook. That handbook was disseminated to its employees, including Olivo.

40. **Crawford had an "open door" policy under which employees could bring "a question, problem or concern related to work" to one's supervisor, the office manager, the general manager, or the president."**

41. **The discrimination allegations against Romero are not severe nor pervasive nor sufficient to support a claim for discrimination.**

42. **In 2008, Olivo was the only painter to receive a pay increase.**

43. **None of the body men in the body shop in 2010 and 2009 received raises those years, including those who did not engage in allegedly protected conduct.**

44. **No complaints were ever made about either Plaintiff regarding their work performance and Plaintiffs were never disciplined for, or counseled as to, their work performance.**

45. **Olivo used to ask for pay advances, sometimes as often as once a month. When Romero was the body shop manager and had the ability to authorize pay advances, he always allowed it.**

46. **Pacheco operated a body shop of his own. Romero knew about it and let him leave work early so that he could attend to his body shop even though it could have been viewed as a competitor to Crawford.**

## Conclusions of Law

1. **The Court has jurisdiction over the subject matter of, and the parties to, this action.**

2. **At all times material to this action, Romero acted within the course and scope of his employment with Crawford.**

3. **The New Mexico Minimum Wage Act ("MWA") excludes "employees compensated upon piecework, flat rate schedules or commission basis," NMSA 1978 § 50-4-21(C)(5) (2008), and thus is not applicable to Plaintiffs.**

4. **To sustain a discrimination claim, Olivo must prove "more than a few isolated incidents" of enmity based on his national origin. *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) (citations omitted). There must be a "steady stream" of opprobrious behavior to rise to the level of an actionable hostile work environment. *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005). A plaintiff cannot meet his burden with just "a few isolated incidents of racial enmity" or "sporadic racial slurs." *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412–13 (10th Cir. 1987).**

5. **Olivo failed to prove that Romero caused a material change in his work environment based on racial animus. *McGowan v. City of Eufala*, 472 F.3d 736 (10th Cir. 2006).**

6. **The FLSA makes it unlawful for an employer to discriminate against an employee "because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). A similar provision appears in**

the New Mexico statutes. NMSA 1978 § 50-4-26.1 (2009). The elements are: (1) protected activity, (2) an adverse employment action "contemporaneous with or subsequent to the protected activity, and (3) a causal connection between the protected activity and the adverse action. *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1206 (10th Cir. 2004).

7. Plaintiffs' retaliation claims must fail where Defendants have non-retaliatory reasons for the alleged adverse actions. *Pacheco v. Whiting Farms, Inc.*, 365 F.3d at 1206. Plaintiffs complained to Romero and Woolard that they were getting insufficient work in 2008. They claim they continued to get what they perceived as insufficient work in 2009-11 based on retaliation. Causation cannot exist where the alleged adverse action preceded the protected activity. *Id.*

8. Crawford and Romero did not violate the anti-retaliation provisions of the FLSA (29 U.S.C. § 215(a)(3)).

9. The FLSA guarantees a minimum wage and overtime pay in certain situations. *See* 29 U.S.C. §§ 206-07.

10. Plaintiffs were non-exempt covered "employees" and Defendants were covered "employers" as those terms are defined by the federal FLSA (29 U.S.C. § 201 *et seq.*).

11. Subsection (a) of the FLSA Section 207 requires employers to pay overtime rates to their employees who work more than forty (40) hours in a given workweek. Here, neither Plaintiff is seeking overtime compensation under the FLSA. They

seek payment for the non-overtime hours during which they were instructed by their employer to remain on Defendants' premises and for which they were not paid.

12. The "7(I)" exemption is not available here because Defendants did not pay their employees rates proportional to the rates they charged their customers. *See Wilks v. Pep Boys*, 278 Fed. Appx. 488, 489 (6th Cir. 2008). The burden to prove such an exemption rests on the employer. *Id.; see also Parker v. NutriSystem, Inc.*, 620 F.3d 274, 277 (3d Cir. 2010); *Ackley v. Dept. of Corrections*, 844 F. Supp. 680, 687 (D. Kan. 1994). Defendants failed to meet the burden.

13. Defendants' reliance on the Section 13(b)(10)(A) exemption also fails.

14. Where an employer requires its employees to remain on the employer's premises to wait for work, the employees are not able to use their time for their own purposes because they are not able to leave the premises to engage in other remunerative or personal activities. 29 C.F.R. 785.16 48B.

15. Both the FLSA and the MWA require an employer who requires its employees to remain on the employer's premises while waiting for work to pay those employees for all the time they spend waiting. *Skidmore v. Swift & Co.*, 323 U.S. 134, 137 (1944); *Wales v. Jack M. Berry*, 192 F. Supp. 2d 1269, 1290 (M.D. Fla 1999); *Moon v. Kwon*, 248 F. Supp. 2d 201, 230 (S.D.N.Y. 2002); 29 C.F.R. 785.15.

16. Plaintiffs and Defendants did not enter into any agreement or understanding that the flag work rate paid to Plaintiffs would compensate them for wait time

hours incurred.  Because there was no agreement, the exception to the rule that employees must be paid for the hours they are required to remain on the premises during non-productive wait time found at 29 C.F.R. 778.318(c) is not applicable here.  *Patsy Oil & Gas Co. v. Roberts*, 132 F.2d 826, 827 (10th Cir. 1943); *Conklin v. Joseph C. Hofgesang Sand Co.*, 407 F. Supp. 1090, 1093 (W.D. Ky. 1975).

17. Defendants failed to keep any record of wait time hours incurred by their employees.  Where an employer fails to keep records of the hours worked and wages paid to its employees, employee-Plaintiffs carry their burden, even if Plaintiffs' testimony is the only evidence presented.  *McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 589 (9th Cir. 1988); *Rivera v. Ndola Pharmacy*, 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007).

18. Plaintiffs should be awarded damages based on their credible and uncontroverted testimony that they worked, on average, 15 hours of uncompensated wait time per week.  *See Wirtz v. McClure*, 333 F.2d 45, 47 (10th Cir. 1964); *Mumbower v. Callicott*, 526 F.2d 1183 (8th Cir. 1975).

19. Defendant Crawford violated the FLSA by not compensating Plaintiffs for wait time and prohibiting them from leaving the premises.

20. The statute of limitations for the FLSA is two years, three years for a willful violation.  *See* 29 U.S.C. § 255.  Crawford's violation was willful.

21. Crawford owes Plaintiff Olivo $47,295.75 in uncompensated wait time.

**22.    Crawford owes Plaintiff Pacheco $11,852.25 in uncompensated wait time.**

All tendered findings and conclusions not incorporated herein are deemed Denied.

A Judgment consistent with these findings of fact and conclusions of law should be drawn up by counsel for Plaintiffs and presented to the Court within twenty (20) days.

DATED this 12th day of January, 2012.

                                                                 _____
                                                                 **BRUCE D. BLACK**
                                                                 **Chief United States District Judge**